ERNEST P. MEHRINGER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mehringer v. Commissioner
Docket No. 6617-71.
United States Tax Court
T.C. Memo 1973-41; 1973 Tax Ct. Memo LEXIS 247; 32 T.C.M. (CCH) 186; T.C.M. (RIA) 73041; February 15, 1973, Filed Ernest P. Mehringer, pro se. Walter T. Thompson, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $141 in petitioner's Federal income tax for 1969. The issues for decision are: Whether petitioner is entitled to a dependency exemption deduction for his mother under section 151, [1] and whether he is entitled to use the head-of-household rates prescribed by section 1(b) (2) (B) in computing his tax liability for that year. *248 2 FINDINGS OF FACT Ernest P. Mehringer (hereinafter referred to as petitioner) resided in Chicago, Illinois, at the time his petition was filed. His 1969 Federal income tax return was timely filed with the internal revenue service midwest service center, Kansas City, Missouri. During 1969, petitioner and his mother, Corinne P. Mehringer, aged 78, lived in a 1-1/2 story, 5-room dwelling, located in a run-down neighborhood in South Chicago. Title to the house was in her name, but the house was bought with a mortgage guaranteed by petitioner and will pass to him on his mother's death. The house was in constant need of repair, and during 1969 and prior years, petitioner did all the repair work and purchased the needed materials with his own money. The house had a fair market value of only about $2,000 and was assessed for local property taxes at $1,200. Because of the run-down condition of the house in 1969, renting it would have been illegal under applicable city regulations without extensive renovation. Due to the amount of work required to keep the house in repair, its use as a residence was practical only if the occupant did the repair work himself. If outside labor *249 had been hired for such work, the cost would have exceeded the rental value of a comparable 3 dwelling. Petitioner was unemployed for 26 weeks during 1969 and received $1,092 in unemployment compensation. For the remainder of the year, he was employed, and his total salary was $3,959.06 less withholdings for F.I.C.A. and Federal income tax amounting to $827.10. During 1969, petitioner gave his mother $2,606 for the payment of the expenses of the household. She deposited this sum and her social security payments amounting to $1,390.80 in a checking account. She drew checks on this account to cover some of the household expenses, and the rest of the family's living expenses were covered by payments made by petitioner from funds not deposited in his monther's checking account. His mother also had a savings account on which interest in the amount of $262 was realized during 1969, but she used none of this interest income for the payment of family living expenses. OPINION Petitioner's right to use the head-of-household rates under section 1(b) (2) (B), as well as his entitlement to a dependency exemption deduction for his mother under sections 151 and 152, depends upon whether *250 he provided over half of her support. 4 Petitioner and his aged, widowed mother were obviously living near the margin of economic survival. He was without work for 6 months of the year and received unemployment compensation during this period. For the rest of the year, he worked and earned a small salary. His mother received social security benefits plus the interest on her savings account. All of the family's resources (except the interest) were used to cover the costs of livelihood. Petitioner's total receipts after taxes were withheld ($4,223.96) were over three times as much as his mother's social security receipts ($1,390.80). Treating the costs of supporting each member of the household as equal in amount, petitioner thus provided over half of his mother's support. Estela De La Garza, 46 T.C. 466 (1966), affirmed per curiam 378 F.2d 32 (C.A. 5, 1967). Respondent relies primarily upon the rental value of the family dwelling to add enough to the mother's support contribution to tip the scales the other way. In the unusual factual situation here presented, however, we do not think the rental value of the house may be taken into account. *251 It was located in a run-down neighborhood in Chicago and, under applicable city regulations, could not have been rented without extensive renovation. More important, the house 5 (bought with a mortgage guaranteed by him) could not have been occupied as a residence if petitioner had not maintained it during 1969 and prior years. It is true that he cannot properly include the value of his services as a contribution to the family's support, Mildred Bartsch, 41 T.C. 883, 885-887 (1964); Frank Markarian, 42 T.C. 640 (1964), affd. 352 F.2d 870 (C.A. 7, 1965). However, since petitioner's past and current services and expenditures made possible the use of the house as the family dwelling, it defies logic to assume that the theoretical rental value of the house should be treated as a support contribution by his mother. Respondent also argues that petitioner did not devote all of his funds to the common pool for household support and, therefore, has not shown that he furnished more than half of his mother's support. While it is true that only $2,606 of petitioner's money went into his mother's checking account, he testified that the rest of *252 his money was also used in one way or another to support the family. We accept this testimony as true. It is strengthened by the evidence as to the rather limited resources that would have otherwise been available to the family. We hold that petitioner has carried his burden of proving that he is entitled to a dependency exemption deduction 6 for his mother and is entitled to use the head-of-household rates in computing his income tax liability. Decision will be entered for the petitioner. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue. ↩